**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC CAMACHO, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>      v.<br><br>THE VITA COCO COMPANY INC.,<br>                         Defendant. | Case No.:  1:26-cv-6043<br><br>**CLASS ACTION COMPLAINT**<br><br>  DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

Plaintiff Eric Camacho ("Plaintiff"), brings this Class Action Complaint individually, and on behalf of all others similarly situated, against Defendant The Vita Coco Company, Inc. ("Defendant", "Vita Coco"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## I.     INTRODUCTION AND SUMMARY OF THE CASE

1.      Plaintiffs bring this class action complaint against Coco Vita for its retention of a substantial windfall generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.      Beginning in February 2025, the Trump administration imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. The tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers, including Vita Coco, responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, consumers in the U.S. paid higher retail prices for goods reflecting the economic burden of these tariffs.

4. Plaintiff is such consumer. Plaintiff Camacho purchased on July 29, 2025, September 10, 2025, January 08, 2026 and February 08, 2026 a VC 330 ML FP with a price that included a pass-through of the IEEPA tariffs[1]. Upon information and belief, the price Plaintiff paid for the Vita Coco Product was higher due to Defendant passing on the cost of IEEPA tariffs.

5. On February 20, 2026, the U.S. Supreme Court held that President Trump's IEEPA-based tariffs are unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

6. Resulting from that decision, importers who paid those IEEPA-based tariffs – including Vita Coco – became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP"). To facilitate the refunds to thousands of U.S. importers – including Vita Coco – the CBP created a tariff refund website to manage IEEPA duty refunds following the Supreme Court's February 20, 2026, *Learning Resources, Inc.* decision.

7. The economic reality of the tariff regime, however, is that importers like Vita Coco did not ultimately bear all the costs of the tariffs.

8. On Friday, November 14, 2025, the White House announced relief from reciprocal tariffs for certain agricultural products. The updated version of Annex II to Executive Order 14257 associated with this announcement includes the tariff codes applicable to coconut water products, which are the bulk of Vita Coco's portfolio. Under the Executive Order, the Company believed that Vita Coco coconut water products will be exempt from reciprocal tariffs as of November 13, 2025, although the 40% ad valorem duty applicable to imports from Brazil continued. The

---

[1] See, Exhibit A

Company believed that the average tariff rate for its products arriving in the United States would decrease from the previously announced 23% to approximately 6% based on current sourcing and product mix.[2]

9.       Vita Coco therefore collected the tariff costs from consumers through elevated pricing, while seeking refunds of the same tariff payments from the federal government.

10.       Unless restrained by this Court, Vita Coco stands to recover the same tariff payments twice – once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those refunds.

11.       This class action lawsuit seeks to prevent such an unjust result.

12.       Unlike companies such as FedEx and UPS who have explicitly stated they will pass tariff refunds back to their customers, Vita Coco has made no such commitment.

13.       Plaintiff brings this class action on behalf of thousands, if not millions, of U.S. consumers who purchased Vita Coco's products during the tariff period and who paid inflated prices reflecting Defendant's pass-through of unlawful tariffs.

14.       Plaintiff seeks restitution of these tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## II.    PARTIES, JURISDICTION & VENUE

15.       Plaintiff Eric Camacho is a resident citizen of Hercules, California. July 29, 2025, September 10, 2025, January 08, 2026, and February 08, 2026, Plaintiff Camacho purchased a Vita Coco 330 ML FP, priced at $21.98, imported from Brazil, a country subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). Upon information and belief, the purchase price for the goods that Plaintiff Camacho purchased from Vita Coco was

---

[2] https://finance.yahoo.com/news/vita-coco-company-issues-statement-120000956.html

increased to account for the tariffs imposed on those products. Plaintiff Camacho would not have paid the increased price if Defendant had not passed the cost of the IEEPA tariffs on to consumers.

16.     Defendant The Vita Coco Company, Inc. is a New York company with its headquarters and principal place of business at 250 Park Avenue South, 7th Floor, New York, NY 10003.

17.     Defendant may be served with process by serving its registered agent, Corporation Service Company (CSC), at 251 Little Falls Drive, County of New Castle, Wilmington, Delaware 19808.

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one class member and Defendant are citizens of different states and there are over 100 putative Class Members.

19.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District, and the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

20.     Venue is proper in this Court because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

### III.     FACTUAL ALLEGATIONS

21.     Defendant The Vita Coco Company, Inc. is a New York company known for its plant-based beverages. They produce coconut water, coconut milk and protein-infused water, PWR LIFT.

22.     Defendant's coconuts are sourced from coconut farms in all over Southeast Asia and Brazil.[3] Brazil is one of the countries that President Trump imposed tariffs of 40%[4].

23.     However, Vita Coco fell under the relief from reciprocal tariffs for certain agricultural products and as a result the company believed that the average tariff rate for its products arriving in the United States would decrease from the previously announced 23% to approximately 6% based on current sourcing and product mix.[5]

24.     Because Vita Coco imported the coconuts that later would become the products they sold in the U.S. during the Class period, the IEEPA tariffs directly increased the cost of products sold to U.S. consumers.

**A. The U.S. IEEPA tariffs imposed on Vita Coco; Vita Coco's corresponding price hikes of their product; and, the unconscionable windfall to Vita Coco at the expense of Plaintiff and members of the Class**

25.     Beginning in February 2025, President Trump issued a series of executive orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. Each executive order was premised on IEEPA authorization of the tariffs. President Trump claimed that these tariffs were justified under IEEPA because of a purported national emergency.

26.     Under the authority of IEEPA, President Trump imposed tariffs of 25% on most imports from Canada and Mexico, tariffs as high as 145% from China, and a baseline 10% tariff on nearly all imports to the United States.

27.     Throughout the relevant period, Coco Vita paid IEEPA tariffs to the U.S. Customs and Border Protection ("CBP"). The IEEPA tariffs had a substantial impact on the cost of Coco

---

[3] https://global.vitacoco.com/pages/faq (last accessed July 16, 2026)
[4] https://investors.thevitacococompany.com/news-releases/news-release-details/vita-coco-company-issues-statement-regarding-tariff-relief (last accessed July 16, 2026)
[5] *Id.*

Vita's products, which coconuts are imported from tariffed countries, including a majority from Brazil.

28.    Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[6]

29.    When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[7] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

30.    Vita Coco was no exception. Like other companies that faced the massive IEEPA tariffs, Vita Coco raised its products' prices.[8]

31.    On February 20, 2026, the U.S. Supreme Court held that the IEEPA tariff regime was unlawful because the IEEPA does not authorize the President to impose such tariffs; the Court thus invalidated all IEEPA-based tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

---

[6] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?* Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020).

[7] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?* Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

[8] The Vita Coco Co Inc (COCO) Q3 2025 Earnings Call Highlights: Strong Sales Growth Amid Tariff ...,Yahoo!finance, October 30, 2025, available at https://finance.yahoo.com/news/vita-coco-co-inc-coco-194719950.html (Last accessed July 16, 2026)

32.     President Trump subsequently issued an Executive Order terminating the IEEPA Tariffs, and on February 22, 2026, the CBP issued CSMS #67834313, announcing that it will halt collection of all tariffs imposed pursuant to IEEPA. The termination of IEEPA tariffs took effect at 12:00 a.m. EST on February 24, 2026.

33.     Consequently, importers who had paid these IEEPA-based tariffs – including Coco Vita – became entitled to refunds of the duties they had previously paid to the CBP. According to Mr. Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 31 at 6.

34.     To facilitate refunds of the $166 billion in collected tariffs, the CBP created a tariff refund website – the "Consolidated Administration and Processing of Entries (CAPE) portal", which went live on Monday, April 20, 2026, at 8 a.m. EST. The CBP expects refunds to be issued within 60 to 90 days after it accepts a refund application.

35.     Given the substantial amount of IEEPA tariffs Coco Vita paid to the CBP because of importing the products needed to prepare their beverages, it is now, understandably, in the process of seeking this vast sum of money from the CBP.

36.     This presents an obvious problem. Although Coco Vita will recover tariff refunds on the tariffed products it sold in the U.S. during the Class period, Vita Coco's U.S. based customers bore the economic brunt of these tariffs by paying higher prices set by Vita Coco. Defendant obtaining a double recovery windfall is therefore imminent. Vita Coco is poised to be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

37.     Vita Coco has an affirmative obligation and duty not only to actively seek from the U.S. the tariff refund money belonging to its customers who purchased their tariffed products during the Class period, but also an affirmative obligation and duty to proactively return this money to the parties that ultimately paid them – Vita Coco's customers.

38.     Unlike other companies including FedEx and UPS who have explicitly stated that they will pass tariff refunds back to their customers, Vita Coco has made no such commitment.

39.     Because Vita Coco has made no legally binding commitment, on its own, to return tariff-related overcharges to consumers who actually paid them, Plaintiffs and members of the Class are given no choice but to seek return of their money by means of this class litigation. Plaintiffs believe this to be the most reliable, efficient, and economical vehicle to serve this purpose.

## IV.     CLASS ALLEGATIONS

40.     Plaintiff brings this class action on behalf of themselves and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The class Plaintiffs seek to represent can be defined as:

> **Nationwide Class**: **All individuals in the United States who purchased one or more of Coco Vita's products during the class period of February 1, 2025, to the present.**

41.     Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

42.      Plaintiff reserves the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

43.      This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

44.      Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

45.      Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased goods from Defendant that were subject to IEEPA tariff related price increases. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

46.      Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

47.      Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

48.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

a. Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b. Whether Defendant paid the IEEPA tariffs imposed on Coco Vita's products' products during the Class Period;

c. Whether Defendant increased retail prices on goods sold to consumers in response to the IEEPA tariffs and in response to the economic uncertainty the tariffs imposed on Defendant's business;

d. Whether Defendant included additional processing or brokerage fees above and beyond the amount of the tariff costs;

e. Whether Defendant has sought and received, or will seek and receive, refunds of the IEEPA tariffs from the federal government;

f. Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

g. Whether Defendant breached duties owed to Plaintiff and Class Members;

h. Whether Defendant's conduct caused injury to Plaintiff and Class Members;

i. Whether Defendant was unjustly enriched; and

j. The appropriate measure of restitution, damages, and other relief owed to U.S. purchasers of the Vita Coco's products that resulted from Defendant's conduct.

49.    These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

50.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

51.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## V.     CAUSES OF ACTION
### COUNT I: UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Class)**

52.     Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

53.     Plaintiff and Class members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

54.     Even after the IEEPA tariffs were no longer being collected from Defendant beginning February 20, 2026, the Defendant made no effort to lower its products' sales prices and continued to sell the products at inflated prices.

55.     Defendant knowingly received and accepted these benefits. Defendant is now in the process of recovering from the government the same tariff costs it collected from its customers, including Plaintiff and Class Members, by selling Vita Coco's products at inflated prices. Defendant has already been enriched by the inflated prices paid by Plaintiff and the Class, and Defendant's recovery of the same tariff costs from the federal government compounds that enrichment.

56.     The tariff-related price increases that Defendant imposed and collected were unlawful. Defendant collected and retained funds to which it was not legally entitled.

57.     Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

58.      It would be inequitable and unjust for Defendant to retain these funds. Under principles of equity and good conscience, Defendant cannot be allowed to retain the amount of the price increases obtained from Plaintiff and Class Members, which Defendant has unjustly obtained as a result of its price increases on Vita Coco's products subject to unlawful tariffs.

59.      Plaintiff and Class members suffered economic injury as a result of Defendant's unjust retention of these funds.

60.      Defendant was unjustly enriched at the expense of Plaintiff and Class members.

61.      Under the circumstances set forth in this Complaint, equity requires that Defendant pay Plaintiffs and Class members all IEEPA tariff-related costs passed through to its customers who purchased Vita Coco's products during the Class period, the amount of which will be proven at trial.

62.      Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class members.

### COUNT II: MONEY HAD AND RECEIVED
**(On behalf of Plaintiffs and the Class)**

63.      Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

64.      Defendant received money from Plaintiff and from each member of the Class in the form of higher prices caused by the pass-through of IEEPA tariff costs.

65.      Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on the imported coconuts needed to make Vita Coco's products.

66.      The Supreme Court has since determined that these tariffs are unlawful because they lacked the requisite statutory authorization.

67.     The money belonged to Plaintiff and to each member of the Class. Specifically, the money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and Class members.

68.     Defendant has not returned the money to the Plaintiffs or to members of the Class.

69.     It will give offense to equity and good conscience if Defendant is allowed to retain the tariff surcharge. In equity and good conscience, Defendant should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiff and Class members, and Defendant is obligated to return it to them. Plaintiff and members of the Class seek return of the money in an amount to be proven at trial.

70.     Plaintiffs plead this Count in the alternative to Count 1. While Count 1 (Unjust Enrichment) addresses the inequity of Defendant's retention of overcharges already collected, this Count more particularly addresses Defendant's receipt and retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Plaintiff and members of the Class, and not by Defendant.

71.     Plaintiff and members of the Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

### COUNT III: DECLARATORY JUDGMENT
### (On behalf of Plaintiffs and the Class)

72.     Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

73.     In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

74.    Defendant has filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs.  However, Defendant passed the cost of the IEEPA tariffs onto consumers like Plaintiff and Class Members.

75.    Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members.

76.    As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages. Plaintiff and Class Members have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Vita Coco's products. Plaintiff and Class Members will imminently suffer further injury due to Defendant's unlawful retention of the tariff refund.

77.    In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

78.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

79.    Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

80.    Plaintiff and Class Members are also entitled to a declaration that any refund Defendant obtains from the U.S. government for IEEPA tariffs must be returned to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as representative of the Class and their counsel as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)     For an order declaring that Defendant is obligated to reimburse Plaintiff and Class Members for any and all IEEPA duties passed on to customers in the form of higher prices of Vita Coco's products, with interest;

(d)     Award damages or restitution in an amount, to be determined at trial, that Defendant was unjustly enriched by the tariff-cost component of sales prices charged to its customers for Vita Coco's products since February 1, 2025, and thereafter;

(e)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(f)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(g)     For pre-judgment and post-judgment interest on all amounts awarded;

(h)     For an order of restitution and all other forms of equitable monetary relief;

(i)     For injunctive relief as pleaded or as the Court may deem proper;

(j)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(k)     Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 16, 2026.

By: */s/ Michael A. Tompkins*
**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq.
Brett R. Cohen, Esq.
Anthony M. Alesandro, Esq.
134 Mineola Blvd, 2nd Floor
Mineola, NY 11501
Tel: 516-873-9550
Fax: 516-747-5024

15

bcohen@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com


**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle, Esq. (*pro hac vice* forthcoming)
Andre Bèlanger Esq. (*pro hac vice forthcoming*)
Paul.doolittle@poulinwilley.com
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536


*Attorneys for Plaintiffs and the Class*